**Jimmie BENTLEY, Petitioner,**

v.

**Barbara BOCK, Respondent.**

No. 99–10441–BC.

United States District Court,
E.D. Michigan,
Northern Division.

Dec. 31, 2002.

Jimmie Bentley, Saginaw, MI, pro se.

Laura G. Moody, Mich. Dept. of Atty. Gen., Lansing, MI, for respondent.

## OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING PETITION FOR WRIT OF HABEAS CORPUS

LAWSON, District Judge.

The petitioner, Jimmie Bentley, filed this *pro se* petition for writ of habeas corpus on November 15, 1999 challenging the constitutionality of his state court conviction for possession of cocaine. The matter was referred to Magistrate Judge Charles E. Binder on September 21, 2000 for report and recommendation. The Magistrate Judge has now recommended that the petition be dismissed for lack of merit, and the petitioner has filed timely objections. After conducting a *de novo* review of the papers submitted by the parties, the Report and Recommendation of the Magistrate Judge, and the petitioner's thorough objections thereto, the Court concludes that none of the grounds advanced by the petitioner justifies the grant of habeas relief in this case. Accordingly, the Court will adopt the recommendation of the Magistrate Judge and deny the petition with prejudice.

I.

As explained by the Magistrate Judge, the petitioner was arrested in Saginaw County, Michigan, on February 7, 1994 on an outstanding warrant from New Jersey. After the petitioner had spent some time

in the back of a police vehicle, the arresting officers noticed rocks of crack cocaine on the backseat floor. The petitioner informed one of the officers that the crack cocaine was for his own use. Further search of the petitioner's person revealed over one thousand dollars in cash.

Later that day, relying on information from both the arresting officers and a confidential informant, a search warrant was obtained for a residence the petitioner had left shortly before his arrest. The search produced, among other things, small quantities of cocaine and marijuana.

The petitioner was bound over for trial on a charge of possession with intent to deliver cocaine, Mich. Comp. Laws § 333.7401(2)(a)(iv), and a supplemental information seeking to enhance his sentence under Michigan's habitual offender law, Mich. Comp. Laws § 769.11.

After a five-day trial, a jury convicted the petitioner on October 31, 1994 of possession of less than twenty-five grams of cocaine, contrary to Mich. Comp. Laws § 333.7403(2)(a)(v), but acquitted him of the greater charge of possession with intent to deliver. On October 27, 1994, an amended supplemental information was filed regarding the habitual offender charge which merely corrected dates and the name of one judge in relation to the petitioner's prior convictions.

On December 27, 1994, the court held a separate hearing on the petitioner's habitual offender status, and found that his sentence was subject to enhancement due to his prior convictions. On January 4, 1995, the petitioner was sentenced to a term of sixty-four to ninety-six months incarceration with credit for 332 days served.

## II.

■ Before proceeding further, the Court notes that on July 19, 2002, the Court issued an Order to Show Cause directing the petitioner, who was released from custody on September 1, 2000, to show cause why the petition should not be denied as moot. In a detailed response filed August 16, 2002, the petitioner explained that while he was indeed discharged on September 1, 2000, he was nonetheless in custody at the time he filed his petition, providing the Court with jurisdiction over this cause. See 28 U.S.C. § 2254. Furthermore, the petitioner alleges that he continues to suffer the collateral consequences of his conviction, including loss of the right to vote ad to serve on a jury, and access to certain jobs, and that such consequences are in any event presumed in the absence of contrary evidence. See Green v. Arn, 839 F.2d 300, 301–02 (6th Cir.1988). The Court agrees that the petition was properly filed while the petitioner was "in custody," and that the presumed consequences resulting from the petitioner's conviction present an ongoing live dispute for the Court's resolution. Accordingly, the Court will dismiss the show cause order and proceed to the merits of the petition.

## III.

The petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (AEDPA). The AEDPA applies to all habeas petitions filed after the effective date of the Act, April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Because the petitioner's application was filed after that date, the provisions of the AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also Cremeans v. Chapleau,* 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases....

A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor,* 529 U.S. 362, 405, 406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable....

[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410, 411, 120 S.Ct. 1495. *See also Lewis v. Wilkinson,* 307 F.3d 413, 418 (6th Cir.2002).

A.

First, the petition alleges that the sentencing court violated Michigan state law by sentencing him as a "drug dealer" when he was convicted only of possession, and

because the habitual offender information was not timely filed. The petitioner further claims that the late filing of the habitual offender information denied him due process of law and subjected him to double jeopardy in violation of the federal Constitution.

■ The Magistrate Judge correctly found that " 'federal habeas corpus relief does not lie for errors of state law.' " *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)). Any remedy for such a violation lies solely with the Michigan courts. *See Long v. Smith*, 663 F.2d 18, 22–23 (6th Cir.1981) ("In a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law.").

The Magistrate Judge further found that the petitioner had not properly exhausted in the state courts his claim that these acts violated federal constitutional rights as well. The petitioner disputes this conclusion, although he does not deny that unexhausted claims may still be rejected if they lack merit in any event. *See* 28 U.S.C. § 2254(b)(2); *see also Cain v. Redman*, 947 F.2d 817, 820 (6th Cir.1991) (holding that the doctrine of exhaustion raises only federal-state comity concerns and is not a jurisdictional limitation of the power of the court).

■ Here, the petitioner's claims lack merit. The petitioner asserts that the late filing of the corrected habitual offender information violated his due process rights under the Fourteenth Amendment to the United States Constitution, but fails to respond to the Magistrate Judge's finding that the amended information only corrected minor errors and made no substantive changes. The petitioner further ignores the Magistrate Judge's finding that an ha-

bitual offender enhancement does not subject the petitioner to double jeopardy. *See Carpenter v. Chapleau*, 72 F.3d 1269, 1272 (6th Cir.1996) (collecting cases). If a party does not agree with any portion of a Report and Recommendation, the party must file specific objections in a timely fashion. 28 U.S.C. § 636(b)(1)(C). A party's failure to file proper objections to the Report and Recommendation waives any further right to appeal. *Smith v. Detroit Fed. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). However, the Court agrees with the Magistrate Judge that no federal constitutional right is implicated by the errors asserted.

The Court will therefore deny relief on these claims.

**B.**

Next, the petitioner claims that his arrest was unconstitutional, the search warrant in question was defective, and the trial court abused its discretion in denying the petitioner's motion to suppress the seized evidence. The Magistrate Judge correctly determined that the full and fair hearing of these claims received by the petitioner in the Michigan state courts bars him from collaterally attacking those findings on habeas review.

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). The Sixth Circuit Court of Appeals utilizes a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court:

First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir.2000) (internal quotations omitted).

■ The petitioner does not deny that he was able to raise his concerns before the trial court or that they were raised on appeal to the Michigan Court of Appeals. Rather, he asserts that he did not receive a full and fair opportunity to litigate his Fourth Amendment claims because (1) counsel was ineffective, (2) the prosecutor engaged in misconduct, and (3) the Michigan Court of Appeals relied on state law to reject the claims. The first two claims will be dealt with later in this opinion, but the third objection is without merit, and not surprisingly, the petitioner cites no authority in support. The citation of state-law cases relying on federal case law is no different than applying federal case law directly.

These claims lack merit and likewise will be denied.

## C.

Next, the petitioner argues that the presumption of innocence was undermined by the presence of four police officers in the courtroom during his trial which "made the Petitioner look as though he was actually guilty." Petition at 24. The Magistrate Judge recognized that the Michigan Court of Appeals had refused to review the claim on the ground that it was not objected to below. Finding the claim to be procedurally defaulted without cause, prejudice, or manifest injustice demonstrated by the petitioner, the Magistrate Judge recommended that this claim be denied.

■ The doctrine of procedural default provides:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 749, 111 S.Ct. 2546, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection or file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 162–66, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Reedus v. Stegall*, 197 F.Supp.2d 767, 779 (E.D.Mich. 2001). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust*, 17 F.3d at 162; *see Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

■ For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Williams v. Coyle*, 260

F.3d 684, 693 (6th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 2635, 153 L.Ed.2d 816 (2002); *see also Warner v. United States,* 975 F.2d 1207, 1213–14 (6th Cir.1992). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Williams,* 260 F.3d at 693. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground[ ] only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson v. Sparkman,* 94 F.3d 199, 202 (6th Cir.1996).

 If the last state court from which the petitioner sought review affirmed the conviction both on the merits and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. *Rust,* 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

 The contemporaneous-objection rule was frequently followed before the petitioner's 1995 trial, at least with respect to challenges to the admission of evidence, claims of prosecutorial misconduct, and the validity of jury instructions. *See, e.g., People v. Buckey,* 424 Mich. 1, 17–18, 378 N.W.2d 432, 440 (1985); *People*

*v. Sharbnow,* 174 Mich.App. 94, 100, 435 N.W.2d 772, 775 (1989). In such cases, habeas review has been foreclosed absent a showing of cause and prejudice. *See, e.g., Engle v. Isaac,* 456 U.S. 107, 110, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (concluding that a petitioner who fails to comply with a state rule mandating contemporaneous objections to jury instructions may not challenge the constitutionality of those instructions in a federal habeas corpus proceeding); *Luberda v. Trippett,* 211 F.3d 1004, 1006–07 (6th Cir.2000); *Rogers v. Howes,* 144 F.3d 990, 992 (6th Cir.1998); *Pearl v. Cason,* 219 F.Supp.2d 820, 828 (E.D.Mich.2002). Although in some such cases Michigan courts may reach the merits of an unpreserved claim, a state court does not "waive" a procedural default by considering whether there are circumstances warranting review on the merits. *Paprocki v. Foltz,* 869 F.2d 281, 285 (6th Cir.1989). Nor does a state court forfeit a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys,* 929 F.2d 264, 267 (6th Cir.1991).

 However, to constitute an adequate and independent state law ground for rejecting a claim, the state procedural rule must be "firmly established and regularly followed." *James v. Kentucky,* 466 U.S. 341, 348, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984). Although the Sixth Circuit has suggested in the past that state courts have the prerogative to default claims when they see fit, *see McBee v. Grant,* 763 F.2d 811, 815–16 (6th Cir. 1985), the Supreme Court has since clarified that federal courts on habeas review have an independent obligation to ensure that a procedural bar is consistently enforced before refusing to consider a claim defaulted by state courts. *See Lee v. Kemna,* 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002). Whether the independent state ground is adequate to

support the judgment is itself a federal question. *Ibid.*

In *James v. Kentucky,* for example, the Court held that a state court distinction between a jury "instruction" and an "admonition" was not so consistently applied as to foreclose review of the petitioner's constitutional claim because of a procedural default. Likewise, in *Lee,* the Court held that the respondent's failure to file a *written* motion for a continuance, as required by state court rules, did not bar his due process claim that he was deprived of his right to present a defense when his defense witnesses suddenly became unavailable. The state rule requiring written motions was not consistently applied by the Missouri courts in such circumstances.

■ Although the procedural rules in those cases were generally well recognized, the focus of the inquiry to determine the *federal* question—i.e., the adequacy of the independent state procedural ground— was on that state's practice itself. Here, as the petitioner correctly notes, Michigan courts frequently waive the contemporaneous objection rule when they perceive the issue to have significant constitutional import. In fact, the Michigan Court of Appeals has applied different standards to both double jeopardy and due process complaints. *Compare People v. Colon,* 250 Mich.App. 59, 62, 644 N.W.2d 790, 792 (2002) (double jeopardy allegation was cognizable regardless of whether it was objected to below because it involved a significant constitutional question), *People v. Crear,* 242 Mich.App. 158, 166, 618 N.W.2d 91, 96 (2000) (denial of due process allegation was cognizable on review even though counsel failed to object below), *People v. Noble,* 238 Mich.App. 647, 651, 608 N.W.2d 123, 127 (1999) (appellate court could consider constitutionality of statute despite failure to raise issue in trial court), *People v. Zinn,* 217 Mich.App. 340, 344, 551

N.W.2d 704, 707 (1996) (appellate court may consider constitutional claims raised for the first time on appeal), *and People v. Lugo,* 214 Mich.App. 699, 705, 542 N.W.2d 921, 925 (1995) (double jeopardy violation involved significant constitutional question and therefore could be raised on appeal despite failure to first raise issue in trial court), *with People v. Pfaffle,* 246 Mich. App. 282, 288, 632 N.W.2d 162, 166 (2001) (reviewing double jeopardy allegation for plain error only), *and People v. Wilson,* 27 Mich.App. 395, 397, 183 N.W.2d 626, 628 (1970) (refusing to review on appeal a due process objection not raised below). The Michigan Supreme Court has recently applied a plain error analysis to unpreserved constitutional error. *See People v. Cornell,* 466 Mich. 335, 362–63, 646 N.W.2d 127, 142 (2002). If there is some pattern to these decisions, it is not sufficiently clear for this Court to conclude that this aspect of the contemporaneous objection rule was "firmly established and regularly followed" at the time of the petitioner's 1997 appeal, at least with respect to constitutional claims such as the one raised here by the petitioner.

One might discern a tendency by the Michigan appellate courts to allow review when they perceive the constitutional question to be "substantial" or "important." But this determination begs the question: can such a finding be an *independent* state law basis for denying review, when it is inextricably bound up with a determination of the merits of the constitutional claim itself?

Here, the Michigan Court of Appeals rejected the petitioner's due process claim with the following words:

> Defendant asserts that he was flanked in the courtroom by four officers, and that he was thereby denied the presumption of innocence. However, defendant did not object below. Consequently, we

conclude that the defendant's conviction should not be reversed on this basis. [*People v.*] *Shuler*, [188 Mich.App.] at 552, 470 N.W.2d 492.

*People v. Bentley*, No. 182914, 1997 WL 33330601, at *2 (Mich.App. Dec.19, 1997) (unpublished opinion). The reference to *People v. Shuler*, 188 Mich.App. 548, 552, 470 N.W.2d 492 (1991), is somewhat curious, as that case holds that a defendant, when given the opportunity to withdraw his guilty plea after learning of the trial court's intention to depart upward but who expressly reaffirmed his plea, waived objection to the prosecutor's noncompliance with an agreement to make a more favorable sentence recommendation. It provides no support for the state court's holding, nor does it illuminate the rationale for declining review.

For the reasons outlined above, this Court is not convinced that the state court's application of a procedural bar in this case constitutes an independent and adequate state law basis for denying the petitioner's constitutional claim. The Court will therefore decline to adopt the portion of the report finding this claim to be procedurally defaulted.

█ Proceeding to the merits of the claim, however, the Court finds no basis for relief. The petitioner does not claim that he was shackled or otherwise restrained during trial. Rather, he asserts that the presence alone of four police officers in the courtroom improperly communicated guilt to the jury. No authority is cited to support this argument. The Sixth Circuit requires actual prejudice to be demonstrated when the defendant complains only about "routine security measures." *United States v. Waldon*, 206 F.3d 597, 607 (6th Cir.2000). The petitioner theorizes that the officers' presence reflected negatively on him, but offers no concrete example of actual prejudice suf-

fered, nor can the Court conceive of any. There should be nothing remarkable to any juror about seeing police officers in a courtroom during a criminal trial.

This claim does not justify issuance of the writ.

### D.

█ Next, the petitioner claims that his counsel was ineffective for failing to interview various witnesses, failure to file a motion regarding a fugitive warrant, failure to attack a search warrant affidavit, and a failure to request that the confidential informant be produced. As the Magistrate Judge pointed out, however, the petitioner's complaints ignore the fact that trial counsel's strategy was to admit possession of cocaine for personal use and focus on persuading the jury that the petitioner had no intent to deliver the cocaine he did possess. Counsel's likely determination that these issues were immaterial to that defense is easily relegated to the category of trial strategy, which generally is not second-guessed on habeas review.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-pronged test for determining whether a petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. Second, a petitioner must show that counsel's deficient performance prejudiced the petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

The Supreme Court emphasized that, when assessing counsel's performance, the reviewing court should afford counsel a great deal of deference:

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689, 104 S.Ct. 2052 (internal quotes and citations omitted). The Court explained that to establish deficient performance, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id* at 690, 104 S.Ct. 2052.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. The Sixth Circuit, applying the *Strickland* standard, has held that a reviewing court therefore must focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311 (6th Cir.1996).

The last state court to issue a reasoned opinion regarding the petitioner's ineffective assistance of counsel claim, the Michigan Court of Appeals, stated, in pertinent part:

Finally, defendant argues that he was denied the effective assistance of both trial and appellate counsel. We disagree. In regard to the trial, defendant's counsel made clear that the defense strategy was to admit possession and focus the defense on rebutting the prosecution's claim that defendant possessed with the intent to deliver. Defendant's testimony supported this tactic. We do not substitute our judgment for that of counsel regarding matters of trial strategy. *People v. Barnett,* 163 Mich.App. 331, 338, 414 N.W.2d 378 (1987). Defendant's argument is particularly untenable where his trial strategy was successful. Regarding defendant's appellate counsel, the record does not support his factual claims. Further, as already discussed, the issues raised in defendant's supplemental appellate brief are without merit and therefore his appellate counsel was not ineffective for failing to include them in defendant's initial appellate brief.

*People v. Bentley,* 1997 WL 33330601, at *2. The Court finds that this determination was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d). The petitioner's objections are exactly the type "after-the-fact" second-guessing of counsel's decisions that the Supreme Court refused to consider in *Strickland.* Counsel's strategy was emi-

nently reasonable given the petitioner's possession of controlled substances in the patrol car and his own admission to the arresting officers that the drugs belonged to him.

This claim provides no basis for relief.

### D.

Finally, the petitioner complains that his conviction was tainted by prosecutorial misconduct when the prosecutor solicited perjured testimony from the officers that arrested the petitioner concerning the warrant allegedly issued for his arrest. The Magistrate Judge noted the trial court's explicit finding that the police properly confirmed the existence of a warrant prior to arresting the petition, and found that no clear and convincing evidence had been shown that this finding was incorrect. *See* 28 U.S.C. § 2254(e)(1).

The petitioner does not object to this finding, but instead reiterates his belief that the claim is not procedurally defaulted. The Magistrate Judge based his ruling not on procedural default, however, but on the merits of the claim. The Court agrees with the finding of the Magistrate Judge on this matter and will therefore deny this claim as well.

### IV.

The decision of the Michigan Court of Appeals was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d). None of the claims raised in the petition have merit, and the Court will therefore deny the petition.

Accordingly, it is **ORDERED** that the Order to Show Cause [dkt # 21] is **DISMISSED**.

It is further **ORDERED** that the Report and Recommendation is **ADOPTED IN PART**.

It is further **ORDERED** that the Petition for Writ of Habeas Corpus is **DENIED**.